# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| APRIL ALNUTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14-00385-CV-W-DGK-SSA |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff April Alnutt seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff suffered from severe anxiety and depression, but retained the residual functional capacity ("RFC") to perform work as a kitchen helper, an industrial cleaner, and a laboratory equipment cleaner.

Because substantial evidence supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. Plaintiff filed her DIB application on August 1, 2011, and her SSI application on October 3, 2011, with each alleging a disability onset date of March 22, 2011. The Commissioner denied her applications, and she subsequently requested an ALJ hearing. The ALJ held an initial hearing, but he found that some of the treatment notes from Plaintiff's

psychiatrist Samuel Fadare, M.D. ("Dr. Fadare") were illegible, so he ordered a consultative examination. After this examination and a supplemental hearing, the ALJ affirmed the Commissioner's denial of benefits. The Appeals Council later denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. With all administrative remedies now exhausted, judicial review is appropriate under 42 U.S.C. § 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or

2

Case 4:14-cv-00385-DGK   Document 19   Filed 06/17/15   Page 2 of 9

Plaintiff challenges the ALJ's determinations at Steps Three and Four. Plaintiff contends that the ALJ erred at Step Three when he erroneously concluded that Plaintiff's depression and anxiety did not meet listing-level severity. Plaintiff next argues the ALJ erred at Step Four by improperly weighing the medical opinion evidence. The Court addresses each challenge below.

**I. Substantial evidence supports the ALJ's Step Three determination.**

Plaintiff first challenges the ALJ's Step Three determination. To demonstrate disability at Step Three, the claimant must show that her impairments meet or equal one of the listings in the regulations. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). With respect to the listings at issue here, a claimant must satisfy one of the requirements in paragraph A of that listing *and* at least two of the requirements in paragraph B *or* one of the requirements in paragraph C. 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.00A. Plaintiff challenges only the ALJ's paragraph B findings. To satisfy the paragraph B listing requirements under either Listing 12.04 (depression-related disorders) or 12.06 (anxiety-related disorders), the claimant must show that her impairment results in at least two of the following:

> (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, and pace; or (4) Repeated episodes of decompensation, each of extended duration.

*Id.* §§ 12.04B, 12.06B.

Here, the ALJ found that Plaintiff failed to meet these requirements. In particular, the ALJ found that Plaintiff had only mild restrictions in activities of daily living; moderate

---

medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. R. at 16-17.

Plaintiff contends that the ALJ reached this decision by ignoring evidence that supported a greater degree of restrictions in the first three functional areas (i.e., activities of daily living; social functioning; and concentration, persistence, and pace). The Court disagrees.

Although the ALJ did not mention every piece of evidence, this does not indicate that he completely ignored the unmentioned pieces. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). On the contrary, the ALJ performed a thorough and evenhanded analysis at Step Three by citing evidence that suggested Plaintiff exhibited some limitations, while also embracing evidence that showed these limitations fell short of listing level severity. R. at 16-17. This analysis is not only supported by the cited evidence, R. at 215-19, 524-25, 532, 535, but also by medical opinion evidence contained elsewhere in the record. R. at 332, 349-50, 527-28. For instance, reviewing psychologists Mark Altomari, Ph.D. ("Dr. Altomari") and Douglas Robbins, Ph.D. ("Dr. Robbins"), as well as consulting licensed psychologist Nina Epperson ("Ms. Epperson"), all found that Plaintiff exhibited, at most, moderate limitations in these three functional areas. R. at 332, 349-50, 527-28. The only opinion finding marked limitations in these areas came from Dr. Fadare, but as discussed below, this opinion deserved little credence.

Considering the ALJ's careful, impartial, and well-supported Step Three analysis, the Court finds no error here.

**II. Substantial evidence supports the ALJ's weighing of the opinion evidence.**

Plaintiff next argues that the ALJ erroneously downgraded Dr. Fadare's opinion, while baselessly elevating the opinions of Dr. Altomari and Ms. Epperson. The Court addresses each opinion assessment separately.

4

### A. The ALJ did not err in discounting Dr. Fadare's opinion.

Dr. Fadare, Plaintiff's treating psychiatrist, rendered an opinion essentially finding her disabled. R. at 366-72. The ALJ afforded this opinion little weight, finding it inconsistent with Plaintiff's daily activities and Dr. Fadare's treatment notes inasmuch as the notes did not show that Plaintiff's condition worsened or her medications changed. R. at 20.

A treating sources opinion is typically afforded controlling weight if it is well-supported and not inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ, however, may discount such an opinion if: (1) it is not supported by medically acceptable laboratory and diagnostic techniques; (2) if the opinion is inconsistent with other substantial evidence; or (3) if it is inconsistent with, or unsupported by, the source's treatment notes. *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). An ALJ must give "good reasons" for discounting a treating source's opinion. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Plaintiff claims that ALJ's proffered reasons are unsupported, and therefore, not "good." First, Plaintiff contends that the ALJ had insufficient information to find inconsistencies between Dr. Fadare's treatment notes and his opinion, because the notes were, according to the ALJ, "almost 100 percent illegible." Second, Plaintiff argues that of the legible portions, it is apparent that her medications *did* change and that her symptoms *did* worsen. Finally, Plaintiff claims that her daily activities were not inconsistent with Dr. Fadare's opinion.

The Court addresses the legibility issue first. At Plaintiff's first hearing, the ALJ remarked that Dr. Fadare's notes were almost completely illegible. R. at 55. This statement, however, concerned the infrequent *handwritten* observations in some of Dr. Fadare's treatment notes. R. at 305-15, 374-81. But those notes also contained boilerplate clinical terms regarding Plaintiff's appearance and condition, which Dr. Fadare could circle depending on the existence

5

of certain symptoms. R. at 305-15, 374-81. As these clinical terms were typewritten, they are not illegible, and therefore, could be used to determine whether the treatment notes were consistent with Dr. Fadare's opinion. And by the second hearing, the ALJ had the benefit of more recent typewritten notes from Dr. Fadare. R. at 533-40. Thus, the Court finds no merit to Plaintiff's first contention.

Turning to the inconsistency findings, the Court agrees that the ALJ erred in finding that Dr. Fadare never changed Plaintiff's medications, because he did occasionally do so. *See* R. at 311-14, 344. Therefore, this basis finds no support in the record. However, this error is harmless because the remaining reasons—and one other not mentioned by the ALJ—all enjoy record support.

First, on the whole, the treatment notes do not show that Plaintiff's symptoms worsened or fluctuated. With the exception of two visits where Plaintiff alleged fleeting suicidal ideations and exhibited slowed speech and psychomotor activity, R. at 309, 379, the notes do not document any functional issues and some even demonstrate Plaintiff's condition improved. For instance, most treatment notes spanning from August 5, 2010,[2] to November 12, 2012, show no issues with thought process and content, memory and concentration, or speech. R. at 305-15, 374-81. Even more relevant, Dr. Fadare's notes rendered after his opinion but directly before the second hearing demonstrate that although Plaintiff was depressed, she appeared well-groomed at her appointments and exhibited no deficits in memory, concentration, speech, thought processes, or thought content. R. at 532-40. These rather benign treatment notes cannot be reconciled with Dr. Fadare's opinion wherein he found Plaintiff disabled. R. at 366-72. As Dr. Fadare's opinion

---

[2] The Court recognizes that some of these notes precede the alleged disability onset date, but it finds that they are relevant to her condition during the disability period. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000).

is inconsistent with—or at the very least unsupported by—his treatment notes, the ALJ did not err in discounting it on this basis. *See Davidson*, 578 F.3d at 843.

Second, Dr. Fadare's opinion was arguably inconsistent with Plaintiff's daily activities. Although Dr. Fadare's opinion portrays Plaintiff as an individual incapable of sustaining social interaction or being able to perform basic work activities, R. at 366-72, she was still able to care for herself and others, perform tasks requiring sustained concentration, venture into public for shopping, and maintain several relationships. R. at 19, 34, 215-19, 224, 352, 524-25, 532, 535. Thus, the ALJ did not err by considering this inconsistency. *See Halverson*, 600 F.3d at 929-30.

Finally, although not mentioned by the ALJ, Dr. Fadare's opinion is flawed in yet another, more fundamental way. His opinion is nothing more than checked boxes with no narrative discussion or citation to supporting treatment notes. R. at 366-72. Opinions in this form are of almost no value in the disability determination. *See Wildman*, 596 F.3d at 964.

Because the record amply supports the ALJ's discounting of Dr. Fadare's opinion, the ALJ did not err in giving it little weight.

### B. Substantial evidence supports the ALJ's decision to afford great weight to Dr. Altomari's opinion.

Dr. Altomari, a state agency reviewing psychologist, opined that Plaintiff was only mildly to moderately limited in her ability to perform certain work activities. R. at 321-335.[3] The ALJ afforded it great weight, finding it consistent with Dr. Fadare's treatment notes, as well as the lack of hospitalization and changes in medication. R. at 20.

Plaintiff challenges the ALJ's determination in two respects. First, she claims that Dr. Altomari is only a reviewing source, and as such, his opinion cannot be entitled to great weight.

---

[3] Dr. Robbins affirmed this finding after reviewing additional records. Plaintiff does not directly challenge Dr. Robbins' opinion.

Second, Plaintiff claims that the main reason for affording it great weight—consistency with treatment notes—is not supported by the record.

Plaintiff's first argument has no merit.  Although opinions from reviewing sources generally do not constitute substantial evidence, *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014), the ALJ may credit such an opinion over that of a treating source's "when [it is] supported by better or more thorough medical evidence."  *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotation marks omitted).  Dr. Altomari's "reviewing source" status, therefore, does not rob his opinion of all probative force.

And here, there were good reasons for the ALJ to elevate Dr. Altomari's opinion over Dr. Fadare's.  For the most part, Dr. Altomari's opinion is more consistent with the medical evidence in the record.  The ALJ did erroneously conclude that Dr. Altomari's opinion was consistent with the treatment notes showing no change in medication, because there were documented medication changes.  However, on the whole, the rather benign findings in Dr. Fadare's notes are consistent with the assessed limitations in Dr. Altomari's opinion.  R. at 305-15, 321-35, 374-81.  Granted, Dr. Altomari rendered his opinion before seeing Dr. Fadare's notes from 2012 and 2013, but these notes only further buttress Dr. Altomari's opinion.  R. at 305-15, 374-81.  Moreover, Dr. Altomari's opinion contained some narrative discussion and citation to supporting record evidence.  R. at 323, 334; *cf. Wildman*, 596 F.3d at 964.

Considering that Dr. Altomari's opinion enjoyed more record support and contained at least some narrative discussion, the ALJ did not err in crediting it over Dr. Fadare's opinion.

### C. Substantial evidence supports the ALJ's decision to give Ms. Epperson's opinion "significant" weight.

Ms. Epperson, a state agency consultative examiner, found Plaintiff mildly to moderately limited in most functional areas.  R. at 527-28.  The ALJ gave it significant weight, finding it

consistent with Dr. Fadare's treatment notes, Plaintiff's allegations, and partially consistent with Dr. Altomari's opinion. R. at 21.

Plaintiff claims the ALJ erred in doing so because (1) Ms. Epperson's opinion was rendered after only one examination; and (2) it was inconsistent with Dr. Fadare's treatment notes. These arguments are without merit.

As mentioned above, an opinion from a consultative examiner can be entitled to *more* weight than a treating source's under certain circumstances. *See Martise*, 641 F.3d at 925. And Ms. Epperson's opinion is consistent with the *majority* of Dr. Fadare's notes. Although Plaintiff highlights a few isolated notes showing functional difficulties, R. at 308-09, 379, most notes documented few functional limitations. R. at 374-81, 532-40. Even more importantly, Ms. Epperson's opinion provides a thorough review of the evidence supporting her decision. R. at 524-28; *cf. Wildman*, 596 F.3d at 964. Thus, the ALJ did not err in elevating it over Dr. Fadare's conclusory and unsupported opinion.[4]

## Conclusion

For the foregoing reasons, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  June 17, 2015                    /s/ Greg Kays
                                                                                GREG KAYS, CHIEF JUDGE
                                                                                UNITED STATES DISTRICT COURT

---

[4] In her reply, Plaintiff cursorily argues that a discrepancy exists among Dr. Fadare's opinion, Ms. Epperson's opinion, and the RFC. Since Plaintiff chose to raise this argument for the first time in her reply brief, the Court will not consider it. *DynaSteel Corp. v. Black & Veatch Corp.*, 698 F. Supp. 2d 1170, 1174 (W.D. Mo. 2010) (citing *United States v. Barraza*, 576 F.3d 798, 806 n.2 (8th Cir. 2009)).